IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KARNELL NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  19-cv-482-RJD |
| ) | |
| JEFFREY DENNISON, TIFFANY BETTIS, ) | |
| and LU WALKER, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Dennison (Doc. 84), and the Motion for Summary Judgment filed by Defendant Bettis (Doc. 91).  For the reasons set forth below, the Motions are **GRANTED**.

**Background**

Plaintiff Karnell Nelson, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Shawnee Correctional Center ("Shawnee"). Plaintiff alleges he was placed in a crisis cell in March 2019 that had a broken window, was filthy, continually lit, and without hygiene supplies.  Plaintiff asserts he complained about these conditions to Bettis, a mental health professional, but she refused to address the problem. Plaintiff was also denied relief by Dennison, Shawnee's former warden.  Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he was allowed to proceed on an Eighth Amendment deliberate indifference claim against Bettis and Dennison for subjecting Plaintiff to

unconstitutional conditions of confinement.

The warden of Shawnee, Lu Walker, was added as a defendant only in his official capacity for the purpose of carrying out any injunctive relief that might be awarded.

Defendants Bettis and Dennison filed motions for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. In support of their motions, Defendants rely on records from the Administrative Review Board ("ARB") that evidence Plaintiff only filed one grievance relevant to the claims in this lawsuit that was not addressed on the merits due to procedural deficiencies.

The ARB records indicate there are twenty grievances in its records that were either received from Plaintiff, or a decision was rendered, between January 1, 2019 and November 23, 2020. The Court has reviewed these grievances and finds the only relevant grievance was dated April 13, 2019[1].

In his April 13, 2019 grievance, Plaintiff writes that he went on crisis watch on April 8, 2019, and he needed help because the light was on all day. Plaintiff complains that he was placed in "seg 2 cell 68" and there was an unbearable stench and inhumane conditions, including black mold. This grievance was submitted as an emergency grievance, but the warden found an emergency was not substantiated on April 19, 2019. Plaintiff submitted this grievance to his counselor, who indicated it was received on April 25, 2019. The counselor did not date the response. This grievance was received by the ARB on May 6, 2019, and returned without a decision on the merits. The ARB advised Plaintiff to submit a copy of the Grievance Officer and Chief Administrative Officer's response (*see* Doc. 85-3).

---

[1] There are other grievances in the record, dated January 4, 2019, January 16, 2019, and January 17, 2019 (*see* Docs. 91-5, 91-9, and 91-10) that complain of conditions of confinement and cell cleanliness. However, Plaintiff's amended complaint clearly indicates his claims relate to March 2019 and beyond, after he was placed on crisis watch. As such, these grievances pre-date the claims in this lawsuit and are not relevant to the exhaustion issue now before the Court.

Defendants assert Plaintiff's April 13, 2019 grievance does not exhaust the claims against them because it did not receive a final disposition from the ARB and did not name or otherwise mention or describe them.

In response to Defendant Dennison's motion, Plaintiff submitted a copy of his grievances, including the grievance dated April 13, 2019 (*see* Doc. 90 at 55, 65).  Based on a review of these grievance documents, it does not appear there are any other grievances filed in the relevant time that complained about the conditions of Plaintiff's cell after he was placed on crisis watch.

In his response filed on December 22, 2020[2], Plaintiff asserts that after Defendant Dennison denied the emergency nature of his April 13, 2019 grievance on April 19, 2019, he immediately submitted it to his counselor.  Plaintiff asserts that counselor Kim Johnson responded to his grievance on April 25, 2019, and returned a copy to Plaintiff while keeping the original.  Plaintiff asked counselor Johnson to return his original grievance, but to no avail. Plaintiff asserts he appealed this grievance to the Grievance Officer, but was denied because he did not submit the original copy of the grievance.   It is not clear whether the Grievance Officer denied the grievance in writing or orally.  Plaintiff asserts that the ARB received his April 13, 2019 grievance on May 6, 2019, but returned it to him without a decision on the merits because he did not have a copy of the Grievance Officer's response.  Plaintiff asserts he could not provide a copy of the Grievance Officer's response because the Grievance Officer refused to address his appeal because counselor Johnson kept his original grievance.

For these reasons, Plaintiff argues he was thwarted in his efforts to exhaust his April 13, 2019 grievance.  Plaintiff also asserts that after the warden denied the emergency nature of the

---

[2] In his response filed on December 22, 2020 (Doc. 93), Plaintiff sets forth arguments with particularity against Defendant Dennison.   However, Plaintiff had already filed a response to Defendant Dennison's motion (*see* Doc. 90). The Court considers Plaintiff's arguments in this response as applicable to both Defendant Dennison and Defendant Bettis.

grievance he was allowed to appeal the decision directly to the ARB and this is sufficient to exhaust the grievance.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on Defendants' motions on May 20, 2021. At the hearing, Plaintiff testified to his understanding of the grievance procedure and asserted he did everything he was supposed to do to exhaust grievances concerning the claims in this lawsuit. Plaintiff's testimony mainly reflected generalities concerning his efforts to exhaust grievances and his frustration with the process and the incidents that occurred at Shawnee. When questioned with particularity about the April 13, 2019 grievance, Plaintiff testified that after the counselor responded to this grievance, he sent it to the Grievance Officer. Plaintiff further testified that after he received the grievance back from the Grievance Officer he sent it to the ARB. Plaintiff later testified to the contrary and asserted that he did not receive any response to his grievance from the Grievance Officer. Upon further questioning, Plaintiff testified that after it was clear counselor Johnson would not give him his grievance back, he had to re-write the grievance and send it to her supervisor.

With regard to his summary judgment responses, Plaintiff testified he did not write the same, but read and reviewed the responses. Plaintiff testified he is familiar with the content of the responses. Plaintiff also testified he was not prepared for the hearing because he was not sure what it was for and the notices concerning the setting of the same were confusing.

## Legal Standards

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also*

*Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his

or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

## Discussion

Based on the evidence in the record and in consideration of the parties' arguments, the Court finds Plaintiff failed to exhaust his claims prior to filing this lawsuit.

The only grievance relevant to Plaintiff's claims and conditions of confinement in his cell after being placed on crisis watch in March 2019 was an emergency grievance dated April 13, 2019. The documentary evidence in the record concerning this grievance indicates it was submitted as an emergency and the warden found an emergency was not substantiated on April 19, 2019. Plaintiff submitted this grievance to his counselor, who indicated it was received on April 25, 2019. The counselor did not date the response. This grievance was received by the ARB on May 6, 2019, and returned without a decision on the merits. The ARB advised Plaintiff to submit a copy of the Grievance Officer and Chief Administrative Officer's response. In his response to Defendants' motions, Plaintiff submitted a sworn affidavit asserting his counselor kept Plaintiff's original grievance and only provided him with a copy of the same. Plaintiff attested that he submitted this copy of his grievance to the Grievance Officer, who rejected the same for failure to submit the original. Plaintiff's sworn testimony at the hearing on Defendants' motions contradicted his previous sworn statements. In particular, at the hearing, Plaintiff testified that he submitted his April 13, 2019 grievance to the Grievance Officer after receiving it back from the counselor. Plaintiff made no mention of only receiving a copy. Plaintiff also testified that after receiving the Grievance Officer's response, he sent this grievance to the ARB. Later at the hearing, however, Plaintiff contradicted this statement and testified that he never received the Grievance Officer's response.

In this instance, the Court cannot find Plaintiff's testimony concerning his efforts to exhaust the August 13, 2019 grievance credible. Plaintiff set forth at least three different versions of events, none of which are supported by documentary evidence. The Court declines to evaluate each scenario provided by Plaintiff concerning his submission and/or response from the Grievance Officer because it would be an exercise in futility given his lack of credibility. Based on the

competent evidence before the Court, it is clear Plaintiff failed to submit his April 13, 2019 grievance to the Grievance Officer and Warden for review (as to the merits), and that the ARB correctly returned the grievance without a decision on the merits due to Plaintiff's failure to provide facility responses. The Court does not find Plaintiff's assertions concerning any efforts to thwart his ability to exhaust this grievance to be credible.

The Court also rejects Plaintiff's argument that his efforts to exhaust were sufficient because his April 13, 2019 grievance was denied by the warden as an emergency and subsequently appealed to the ARB. Relevant to this issue is 20 ILCS § 504.840, which (in its current form) reads:

An offender may request a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer.

   a) If there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis.

   […]

   c) If the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process.

Subsection (c) was included as an amendment to the regulation in April 2017. Because the facts of this case postdate the amendment, subsection (c) must be applied in the Court's analysis. In this instance, Plaintiff initiated the standard grievance process after the warden found his April 13, 2019 grievance was non-emergent when he submitted it to his counselor, but he was required to continue the process and was not allowed to submit it to the ARB without first receiving a response from the Grievance Officer and Warden. Thus, Plaintiff's efforts were procedurally deficient and

the Court finds no basis to find Plaintiff exhausted the relevant grievance.

Further, the Court finds this grievance fails to exhaust the claims against Bettis and Dennison insofar as Plaintiff never named, identified, or described Defendants. Importantly, grievances must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint. While the Seventh Circuit has interpreted this as requiring the inmate plaintiff to identify names only to the extent practicable, *see Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010), there is no indication that Plaintiff's April 13, 2019 grievance was directed toward Defendants or any other individual.

Finally, the Court finds it pertinent to address Plaintiff's testimony concerning his confusion regarding the purpose of the May 20, 2021 hearing. The Court is fully aware that Plaintiff is on parole and no longer incarcerated. In light of this circumstance, the Court initially entered an order on April 8, 2021 setting this matter for a hearing on May 10, 2021. Upon receipt of Defendant Bettis' motion to continue the hearing, it entered an order on April 9, 2021 continuing the hearing to May 20, 2021. The Court's April 9, 2021 order was sent to Plaintiff on the date it was entered and there is no indication receipt of the same was delayed. Plaintiff attended the May 20, 2021 hearing in-person as directed. Therefore, the Court finds no basis for the assertion that Plaintiff did not, or was unable, to discern the purpose of the May 20, 2021 hearing.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Dennison (Doc. 84), and the Motion for Summary Judgment filed by Defendant Bettis (Doc. 91) are **GRANTED**. This matter is **DISMISSED**

**WITHOUT PREJUDICE.** The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**DATED: May 21, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
